IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JASON C. SMITH                                                                                            PLAINTIFF

      v.      Civil No. 12-2119

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

  Plaintiff, Jason Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**  **Procedural Background:**

  Plaintiff filed his DIB and SSI applications on March 24, 2009, alleging an onset date of December 1, 2007, due to chronic neck and back pain, hypertension, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, generalized anxiety disorder ("GAD"), and polysubstance abuse in early remission. Tr. 140-143, 158-159, 167, 173. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 84-87. An administrative hearing was held on April 13, 2010. Tr. 36-83. Plaintiff was present and represented by counsel.

  At the time of the hearing, Plaintiff was 34 years old and possessed an eleventh grade education. Tr. 41. He had past relevant work ("PRW") experience as a cook, hand packer, and industrial cleaner. Tr. 29, 42-46, 174, 183-196.

  On January 4, 2011, the ALJ found Plaintiff's chronic neck and back pain, hypertension, ADHD, bipolar disorder, GAD, and polysubstance abuse in early remission to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

Tr. 22-24. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform light work requiring only occasional climbing, balancing, stooping, kneeling, crouching and crawling. Tr. 24-29. He also determined that Plaintiff could not work around hazards, including driving, as a part of his work, and he could only perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ concluded that Plaintiff could perform work as a cleaner, small products assembler, and inspector/tester. Tr. 30.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 18, 2012. Tr. 1-6, 14-16. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings

of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating

3

physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

The evaluation of mental impairments, as are alleged in the present case, is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

In the present case, the evidence reveals that Plaintiff was suffering from bipolar disorder, panic disorder with agoraphobia, and ADHD. While the ALJ was correct in pointing out that Dr. James Parks initially stated that Plaintiff's bipolar symptoms were most likely attributable to his drug use and diagnosed him with substance abuse and anxiety disorder, we note that Plaintiff continued to receive treatment at Western Arkansas Counseling and Guidance Center ("WACGC") through December 2009, long after his substance abuse had gone into remission, and was both diagnosed with and treated for bipolar I disorder with psychotic features, among other diagnoses.[1] Tr. 391, 393-394, 402-404, 405-407, 408-410, 411-413, 464-466. And, although it is true that Plaintiff's medical records did reveal some improvement in Plaintiff's condition, the record does not make clear exactly how Plaintiff's mental impairments would impact his ability to perform work-related tasks.

The record contains only two mental RFC assessments. The first assessment was completed by Dr. Winston Brown on June 16, 2009. Reviewing only Plaintiff's medical records, he diagnosed Plaintiff with ADHD, bipolar disorder, and anxiety disorder. Dr. Brown then concluded that Plaintiff would have moderate limitations with regard to carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision and without being distracted, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors,

---

[1] We also note that bipolar disorder can precipitate substance abuse, as a means by which the sufferer tries to alleviate his symptoms. Li-Tzy Wu et al., "Influence of Comorbid Alcohol and Psychiatric Disorders on Utilization of Mental Health Services in the National Comorbidity Survey," 156 *Am. J. Psychiatry* 1235 (1999); Edward J. Khantzian, "The Self-Medication Hypothesis of Addictive Disorders: Focus on Heroin and Cocaine Dependence," 142 *Am. J. Psychiatry* 1259, 1263 (1985). But, the mere fact that substance abuse aggravated his mental illness does not prove that the mental illness itself is not disabling. *See Brown v. Apfel,* 192 F.3d 492, 499 (5th Cir.1999); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.1998).

AO72A
(Rev. 8/82)

responding appropriately to changes in work setting, setting realistic goals or making plans independently of others. Tr. 425-442.

On April 1, 2010, Plaintiff was referred, by his attorney, to Dr. Patricia Walz for a consultative psychological evaluation. Tr. 247-257, 474-480. In conjunction with her own interview with the Plaintiff, Dr. Walz reviewed the majority of Plaintiff's medical records. Plaintiff reported the following symptoms: being a different person every 15 minutes, swings between happiness and crying, experiencing 11 severe panic attacks, paranoid thinking, problems with concentration and memory, sleep disturbance, appetite disturbance, lack of motivation, and anger management issues resulting in a physical altercation with a relative a few weeks earlier. During the examination, he moved almost constantly and had a "dramatic" presentation, which Dr. Walz attributed to his mental illness. His mood was anxious, and his affect was expansive. Tr. 478. Dr. Walz diagnosed him with bipolar II disorder, rapid cycling, and noted that, while his past substance abuse had certainly affected his mood, he had not used drugs in quite a while. She also diagnosed probable borderline intellectual functioning and assessed him with a global assessment of functioning score ("GAF") of 40-45. Dr. Walz made the following observations: his social skills were impaired, he had difficulty staying on task, and his processing seemed a little impulsive. She also assessed Plaintiff with extreme or severe limitations in the following areas: 1) dealing with work stresses; 2) maintaining attention and concentration; 3) maintaining regular attendance; 4) being punctual; 5) sustaining an ordinary routine without special supervision; 6) completing a normal workday or workweek, 7) working at a consistent pace; 8) demonstrating reliability; 9) behaving in an emotionally stable manner; 10) dealing with the general public; 11) accepting instructions and responding appropriately to criticism from supervisors; and, 12) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 470-472.

The ALJ dismissed Dr. Walz's assessment, for the following reasons: 1) she interviewed Plaintiff on only one occasion; 2) she did not have access to Plaintiff's most recent treatment records

indicating some improvement in his condition; and, 3) her opinion conflicted with the treatment notes from WACGC. Our review of the record has failed to reveal any direct conflicts between Dr. Walz's report and Plaintiff's ongoing mental treatment records. In fact, the record reveals a lengthy history of treatment for bipolar disorder, anxiety disorder with agoraphobia, ADHD, and anger management issues with at least one hospital admission following an attempted suicide by overdose. And, while his symptoms do appear to have lessened somewhat in their severity, he continues to deal with mood swings, frustration, anger management, and panic attacks. He does not have a drivers license due to his panic attacks, has no friends, does not socialize with anyone outside of his family, and does not even go to the store. Tr. 54-56.

Accordingly, we find that the record does not contain sufficient evidence upon which the ALJ could base a determination of Plaintiff's mental RFC. *See Andler,* 100 F.3d at 1393 ("Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse."). And, remand is necessary to allow the ALJ to obtain a mental RFC assessment from Dr. Beyga, Plaintiff's treating psychiatrist at WACGC, to determine Plaintiff's exact mental abilities and limitations. *See* Social Security Ruling 96-5p ("Adjudicators are generally required to request that acceptable medical sources provide [medical source] statements with their medical reports.").

IV.     **Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of April 2013.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)